United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 14, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 06-30013

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

versus

ERIC GERMAN,
FELICIA SMITH,
RICHARD RANDALE JACKSON,
Defendants-Appellants.

Appeals from the United States District Court
For the Western District of Louisiana

Before HIGGINBOTHAM, WIENER, and PRADO, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Defendants appeal their convictions and sentences for drug related offenses. Eric German argues that the district court abused its discretion in denying his motion for a continuance, and that his within-guidelines sentence is unreasonable in light of the section 3553(a) factors. Richard Jackson argues that there is insufficient evidence to support his conviction for conspiracy to distribute crack and that the district court legally erred in ruling that suppression is not a remedy for violations of the

pen-trap statute. He also argues that the district court abused its discretion in denying his motion for a continuance and that the district court erred in calculating his drug quantity. Finally, he argues that his within-guidelines sentence is unreasonable in light of the 3553(a) factors. Felicia Smith argues only that her within-guidelines sentence is unreasonable in light of the 3553(a) factors. We affirm.

I

By the evidence, defendant Eric German regularly bought cocaine by the kilo at the Downtown Collision Shop on Oak Cliff Street in Dallas, drove it home to Louisiana, turned some into crack, and sold both throughout North Louisiana. He lived with his girlfriend, Defendant Felicia Smith, who often helped out, buying baking power, and accompanying him on pickups and deliveries. State's witness Kelvin Gay was Eric German's right-hand man. Before Kelvin Gay was convicted in 2001 on drug charges, he distributed large quantities of crack and cocaine for Eric German. Eric German paid for Gay's defense in 2001, and regularly sent him money while he was in prison. German also helped Gay earn a downward departure by fabricating stories about drug dealers that they knew, and even setting up a dealer on Gay's behalf. For his substantial assistance, Gay's sentence was reduced to thirteen years, six months.

While Kelvin Gay was in prison, Defendant Richard Jackson covered his turf, selling crack for Eric German in amounts varying

2

from 9 to 18 ounces.  A government informant made five controlled purchases of crack from Jackson between December 2003 and April of 2004.  Pen register records at trial indicated that 273 phone calls were made between Jackson and German during the months of January through April of 2004.

In August of 2004, police officers tailed German and Smith while on their drug runs — a meeting with a tow truck, a visit to an apartment complex, and an exchange of packages at a car wash. Eventually, German and Smith violated the traffic code.  Officers pulled them over, got consent to search the car, and found one kilo of cocaine in the engine compartment.  Officers next got a warrant to search a second car that the couple had left at the apartment complex, and found in its engine compartment both crack and cocaine.  At the station, German waived his Miranda rights and admitted the details of his crime, including the names of his supplier and distributors.

When Kelvin Gay's payments from German stopped coming, he turned state's evidence, agreeing to testify against Eric German, Felicia Smith, and Richard Jackson.  For his cooperation, his sentence was reduced to time served.  Kelvin Gay's girlfriend, Dommneaka Green, who had pleaded guilty to drug charges, also agreed to testify.

The case went to trial on the Third Superseding Indictment charging one count of conspiracy to distribute cocaine (Count 1),

one count of conspiracy to distribute crack cocaine (Count 2), and one count of conspiracy to distribute marijuana (Count 3), all in violation of 21 U.S.C. §§ 841(a) and 846. Each defendant was also charged with seven counts of possession with intent to distribute either cocaine or crack cocaine in violation of 21 U.S.C. § 841(a) (Counts 4 - 10).

German was charged with one count of possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count 11) and one count of conspiracy to commit money laundering in violation of 18 U.S.C.§ 1956 (Count 12). Three additional counts of forfeiture were charged against German in Counts 13, 14 and 15 in connection with the drug distribution offenses, the money laundering offense and the firearm offense (Counts 13 - 15).

Over denials by the prosecution, German insisted that he had been given immunity for all crimes prior to 2002 in exchange for his cooperation in setting up the dealer on Gay's behalf. Then, five days before trial, the government notified German that it did indeed have evidence of his cooperation, though it still denied that he was given immunity. On the eve of trial the government produced:

(1) A memo from the AUSA in Kelvin Gay's case which identifies the drug dealer that was set up as a result of German's cooperation; (2) The identity of an FBI agent in Texas to whom German was referred for cooperation by the FBI in Louisiana; (3) A transcript

of a recent interview with Kelvin Gay corroborating German and listing a new cast of characters in the conspiracy that Gay was prepared to name at trial, characters which the government would argue were fabricated at the time to earn a reduction in his sentence; and (4) An FBI agent who asserted that German first came to the FBI's attention when he offered to provide cooperation on behalf of Kelvin Gay.

German moved for a continuance, a motion joined by his co-defendants. The district judge heard argument and testimony from government agents denying that immunity was ever offered. The district court denied the motion for continuance, ruling that none of the information provided to defendants gave rise to a claim that a federal agent had granted immunity. The district court reviewed Kelvin Gay's complete file, including grand jury evidence, and concluded that "there was nothing exculpatory to any defendant in it" and that it was "in almost perfect conformity" with government-agent testimony.

German then argued that the prosecutors production of the file with information on Kelvin Gay was untimely. The district court disagreed, ruling that the impeachment information about Kelvin Gay having been provided before the cross-examination of the witness, was timely. The court further ruled that defendants had time to make effective use of the impeachment evidence at trial.

After an eight-day trial, the jury found Eric German guilty of Counts 1, 2, 4, 5, and 12 and not guilty of Count 3. The jury found

Felicia Smith guilty of Counts 1, 2, and 4 and not guilty of Count 5. The jury found Richard Jackson guilty of Counts 2 and 6 - 10.

II

Jackson first attacks the sufficiency of the evidence for his conspiracy conviction, arguing that no rational trier of fact could have found the essential elements of that offense beyond a reasonable doubt.[1] In reviewing a conviction for sufficiency, we accept all reasonable inferences and credibility choices that support the jury's verdict.[2]

The essential elements of a drug conspiracy are that Jackson (1) agreed with at least one other person; (2) possessed with the intent to distribute a controlled substance; (3) knew the conspiracy existed; and (4) participated intentionally in the conspiracy.[3]

The evidence against Jackson is considerable. First, an informant testified about five purchases of crack cocaine from Jackson between December 16, 2003 and April 13, 2004. Second, there is evidence of frequent phone contact between Jackson and German, including 273 phone calls over a period of four months in 2004. This evidence takes the form of both phone records pulled

---

[1]*United States v. Brugman*, 364 F.3d 613, 615 (5th Cir. 2004).

[2]*United States v. Gonzales*, 866 F.2d 781, 783 (5th Cir. 1989).

[3]*United States v. Rena*, 981 F.2d 765, 771 (5th Cir. 1993); 21 U.S.C. § 841(a) & 846.

6

from German's trash and pen register evidence.  Third, a drug ledger was pulled from German's trash that referenced a person named "Black."  Kelvin Gay then testified that Jackson's street name was "Black."  And fourth, Kelvin Gay testified that German told him that Jackson had taken over Gay's turf while he was in prison.  Gay also described drug transactions with Jackson involving as much as 18 ounces of crack.

Jackson asks us to ignore Gay's testimony as incredible, arguing that Gay and Jackson were not on the street at the same time.  Yet Gay was out of prison from November of 2000 through October 2001, a period about which he testified.  The determination of witness credibility is the province of the jury, and we will not disturb its finding unless the witness asserted "facts that the witness physically could not have observed or events that could not have occurred under the laws of nature."[4]  We accept the jury's beyond a reasonable doubt finding as rational.  On review of Jackson's challenge to the sufficiency of the evidence, we affirm his conviction.

## III

Jackson next argues that the district court legally erred in ruling that there is no suppression remedy for violations of the pen-trap statute.  Jackson argued that pen-register evidence, which recorded only phone numbers dialed from Jackson's and German's

---

[4]*United States v. Bermea*, 30 F.3d 1539, 1552 (5th Cir. 1994).

phones, was obtained in violation of the pen-trap statute, 18 U.S.C. 3122. Proceeding without a hearing, the district court denied Jackson's motion to suppress, ruling that even if a statutory violation had occurred, suppression was unavailable because the Fourth Amendment is not implicated by a pen register.

We agree. In *Smith v. Maryland* the Supreme Court held that the non-content surveillance of a pen register is an insufficient invasion of privacy to implicate the Fourth Amendment.[5] Jackson concedes this, but urges us to "fashion as a remedy for breach of the statute the exclusion of evidence obtained without complying with the statute."

The government replies that in *Kington* we held that the suppression remedy is available for *constitutional* violations only, citing a footnote which explains that "[t]he Supreme Court has expressly rejected the idea that 'a federal court should use its supervisory power to suppress evidence tainted by [even] gross illegalities that did not infringe defendant's constitutional rights.'"[6]

---

[5]442 U.S. 735 (1979).

[6]*Unites States v. Kington*, 801 F.2d 733, 737 (5th Cir. 1986); *United States v. Payner*, 447 U.S. 727, 734 (1980).

8

Although generally supported by case law,[7] such a sweeping conclusion is far from clear.  In *Miller v. United States*, the Supreme Court excluded money seized by federal officers because they violated 18 U.S.C. § 3109 by breaking through a door without indicating their authority and purpose to arrest.[8]  Later in *Caceres*, the Supreme Court refused to exclude evidence obtained by an IRS agent who recorded a phone call, explaining that "[s]ince no statute was violated by the recording of respondent's conversations, this Court's decision in *Miller v. United States* is likewise inapplicable."[9]

What is clear, however, is that in statutory cases like this one, Congressional intent controls.[10]  Indeed, "[w]here Congress has both established a right and provided exclusive remedies for

---

[7]*United States v. Harrington*, 681 F.2d 612, 612 (9th Cir. 1982) ("There must be an exceptional reason, typically the protection of a constitutional right, to invoke the exclusionary rule.");  *United States v. Hensel*, 699 F.2d 18, 29 (1st Cir. 1982) ("The exclusionary rule was not fashioned to vindicate a broad, general right to be free of agency action not 'authorized' by law, but rather to protect specific, constitutionally protected rights."); *United States v. Ware,* 161 F.3d 414, 424 (6th Cir. 1998) ("While the exclusionary rule has been applied to remedy statutory violations, these cases typically implicate underlying constitutional rights such as the right to be free from unreasonable search and seizure."); *see also United States v. Thompson*, 936 F.2d 1249, 1251 (11th Cir. 1991).  Moreover, even in constitutional cases the Supreme Court has recently cautioned against expanding the exclusionary rule, emphasizing that suppression is a "last resort" that generates "substantial social costs." *Hudson v. Michigan*, 126 S.Ct. 2159, 2163 (2006).

[8]357 U.S. 301 (1958). *But see Thompson*, 936 F.2d at 1251 (arguing that this statute implicates underlying Fourth Amendment rights).

[9]*Unites States v. Caceres*, 440 U.S. 741, 755 n.21 (1979).

[10]*United States v. Kington*, 801 F.2d 733, 737 (5th Cir.1986).

9

its violation, we would encroach upon the prerogatives of Congress were we to authorize a remedy not provided for by statute."[11]

Jackson has identified no statutory provision empowering this court to suppress evidence collected in violation of the pen-trap statute. Yet the pen-trap statute provides for fines and imprisonment for knowing violations.[12] In contrast, the wire-tap statute specifically provides for an exclusionary remedy when the statutory requirements are not met.[13] In our case, Congress has determined that the benefits of an exclusionary rule do not outweigh its substantial social costs.

The Eleventh Circuit agrees. In *Thompson*, relying in part on our *Kington* decision, it refused to extend the exclusionary rule to statutory violations of the pen-trap statute. We join our sister circuit in concluding that the district court properly denied Jackson's motion to suppress as a matter of law.

IV

Eric German and Richard Jackson next argue that the district court abused its discretion in denying their motion for a continuance, which would have allowed them to obtain more documents

---

[11]*United States v. Frazin*, 780 F.2d 1461, 1466 (9th Cir.1986); *see also Unites States v. Ware*, 161 F.3d 414, 424 (6th Cir. 1998) ("Generally, when Congress has designated a specific remedy for violation of one of its acts, courts should presume that Congress has engaged in the necessary balancing of interests to determine the appropriate penalty.").

[12]18 U.S.C. § 312(c). Compare this with the wiretap statute, which does provide for an exclusionary remedy. 18 U.S.C. §§ 2515, 2518(10)(a).

[13]18 U.S.C. §§ 2515, 2518(10)(a).

10

with which to impeach Gay, and which might have turned up evidence of immunity.[14] Trial judges have broad discretion in deciding requests for continuances, and we review only for an abuse of that discretion resulting in serious prejudice.[15]

Such abuse has not been shown. The district court examined the file and ruled that it contained nothing exculpatory. And even now defendants can identify no evidence that might have helped their case. They raise only the speculative argument that the district court's ruling "robbed [German] of time to investigate the possibility of additional inconsistent statements." What we do know is that the defendants made good use of Gay's file at trial, impeaching his credibility as a convicted drug-dealer who had changed his story to shorten his prison time.

German continues to hint that he was granted immunity and that a continuance would have uncovered this agreement. After hearing testimony from several AUSAs, the district court disagreed, ruling that the defense could continue its investigation of German's "immunity" throughout trial. No motion for new trial was filed on the basis of newly-discovered evidence of immunity and no such evidence is identified on appeal. Neither defendant has shown prejudice. Hence, on review of the district court's denial of the

---

[14]*See United States v. Correa-Ventura*, 6 F.3d 1070 (5th Cir. 1993) (reviewing for abuse of discretion).

[15]*United States v. Correa-Ventura*, 6 F.3d 1070, 1074 (5th Cir. 1993).

defendant's motion for a continuance, we affirm the judgment of conviction.

V

Finally, all three defendants challenge their sentences, each arguing that their within-guideline sentences are unreasonable in light of the 3553(a) factors. Jackson alone further argues that the district court clearly erred in calculating his drug quantity.

Felicia Smith's challenge is the most compelling, but fails. She was sentenced to 292 months, the bottom of the advisory guideline range. As she notes, her role in the offense, largely chauffeuring and buying baking soda, was significantly less than that of her co-defendants. At sentencing, her counsel pointed out that Smith was "just a kid," without so much as a traffic ticket in her past, who refused repeated plea offers to avoid hurting the father of her three-year-old child.

The district court considered these arguments and was unmoved. The court ruled that "the guidelines adequately take into account the seriousness of the offense for which she was found guilty, which is also one of the concerns under Section 3553(a)." The district court properly calculated Smith's guideline range, and her resulting sentence is accordingly entitled to a presumption of reasonableness.[16]

---

[16]402 F.3d 511, 519 (5th Cir. 2005).

Eric German and Richard Jackson also urge this court to reduce their sentences on the grounds that a lesser sentence would better achieve the objectives listed in 3553(a).  Richard Jackson was sentenced to 360 months.  Eric German was sentence to life.  Each argues that his prior conviction is either too minor or too stale to be included in his criminal history score.  The district court considered and rejected Jackson's argument and  German's argument wasn't raised below.  Both within-guideline sentences are entitled to a presumption of reasonableness.[17]

Finally, Jackson argues that the district court clearly erred in calculating his drug quantity by charging him with more drugs than he could have reasonably foreseen when he joined the drug conspiracy.  We disagree.  The informant Tim Adams testified that Jackson supplied him with crack in excess of the 50 grams charged.  Adams testified that when he made the controlled buys, he saw a lot of crack in Jackson's possession.  He also told investigators that while he was living with Jackson, he had seen other drug sales.  Gay testified that Jackson took over his turf while in prison, receiving as much as 9 to 18 ounces of crack from German at a time.  In addition to this testimony, the district court found that three "trash pulls" suggested enough kilogram wrappers of cocaine and baking soda to connect 1500 grams of crack to the conspiracy during the time that Jackson was a member.  Jackson has not persuaded us

---

[17]*Unites States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005).

13

that this conclusion is clearly erroneous.  The convictions and sentences of German, Smith, and Jackson are

AFFIRMED.