# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 16, 2009

Charles R. Fulbruge III
Clerk

No. 08-50722

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL BREON; CORNELIUS ROBINSON,

Defendants - Appellants.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:08-CR-1-5

Before JOLLY, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

Cornelius Robinson appeals his conviction and sentence arising out of a mortgage loan fraud scheme; Michael Breon only challenges his sentence. We affirm for the reasons below:

1.     Robinson's appeal of his conviction based on the district court's denials of his continuance and severance motions fails. The district court has considerable discretion to decide continuance motions. *United States v. German*, 486 F.3d 849, 854 (5th Cir. 2007). Here, Robinson's counsel had more than 60 days to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

prepare for trial and full access to both Robinson himself and to the government's discovery to aid in his preparation; furthermore, Robinson does not note any specific inadequacies caused by his counsel's unpreparedness. Under these circumstances, the district court did not abuse its discretion when it refused to continue the trial. *See United States v. Stalnaker*, 571 F.3d 428, 439 (5th Cir. 2009) (upholding a severance denial in a complex mortgage fraud case where the defendant's counsel had six weeks to prepare).

Neither did the district court abuse its discretion when it denied Robinson's severance motions. Robinson does not point to any specific prejudice he suffered because of the joint trial, and any prejudice would have been cured by the district court's instruction to the jury to "give separate consideration to the evidence as to each defendant." Further, although his codefendants did testify that Robinson misled them and that he was the orchestrator of the scheme, these charges were largely undisputed by Robinson and were not adverse to his particular defenses. In short, the jury did not have to disbelieve Robinson's defense (that he relied on the advice of professionals and believed his actions were legal) in order to believe those of his co-defendants (that they believed the transactions were legitimate because they trusted Robinson), or vice versa. *See United States v. Daniels*, 281 F.3d 168, 177 (5th Cir. 2002).

Neither of these alleged errors have merit and consequently his conviction is AFFIRMED.

2. Robinson challenges his 327-month sentence as procedurally unreasonable, arguing that the district court failed to give adequate reasons for imposing a sentence at the upper limit of his properly calculated Guidelines range. A sentencing court must explain its reason for imposing a sentence at a particular point in a defendant's sentencing range if the range is greater than 24 months. 18 U.S.C. § 3553(c)(1).

We review Robinson's sentencing for plain error. *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009).[1] Robinson's presentence report ("PSR"), which the district court adopted without modification, calculated a Guidelines range of 262 to 327 months; Robinson does not challenge the Guidelines calculations. The court stated four reasons for imposing a sentence at the upper limit of the advisory range. Three of the four stated reasons had already been considered when calculating his base offense level in his PSR, but that does not matter here. The district court "is free to give more or less weight to factors already accounted for in [the] advisory range." *United States v. Douglas*, 569 F.3d 523, 527-28 (5th Cir. 2009). Further, two of the district court's stated reasons for imposing the maximum sentence were that Robinson "ruined 15 people's lives" and caused significant financial harm. Although these were both accounted for in determining Robinson's advisory range (under the adjustments for number of victims and amount of loss, respectively) Robinson's conduct exceeded the minimum thresholds for both adjustments. Therefore, the court's stated reasons for imposing a sentence at the upper limit of Robinson's Guidelines range were adequate. His sentence is AFFIRMED.

3.     When a defendant properly objects to his sentence in the district court, as Breon did, we review the sentence for procedural and substantive reasonableness. *Douglas*, 569 F.3d at 526. We review the district court's interpretation of the Guidelines *de novo* and its factual findings for clear error. *Id.* "A district court's determination of the amount of loss caused by fraud is given wide latitude." *United States v. Taylor*, 582 F.3d 558, 564 (quoting *United States v. Brewer*, 60 F.3d 1142, 1145 (5th Cir. 1995)).

---

[1] At oral argument, Robinson's counsel argued for the first time that Robinson's sentence is substantively unreasonable because it is disproportionate to the sentences of infamous financial criminals who caused more financial harm than Robinson did. Factors other than financial harm (including his criminal history background) contributed to Robinson's sentence, however, so the comparisons to the unrelated sentences are inapt.

Breon argues on appeal that the sentencing court erred in three ways when calculating his sentence, but he is wrong on all three counts. First, the district court properly applied one of the three methods of loss calculation (actual loss, intended loss, or gain) permitted by the United States Sentencing Guidelines. U.S.S.G. § 2B1.1(b)(1) n.3. Although the district court did not clarify which of those three methods it was using, its estimate reasonably could have been based on any of the three methods. It could represent an estimate of the amount by which Breon's transaction inflated the price of the property that he flipped, and thereby the amount he contributed to the actual loss suffered by the lending institution for a later flip; it could represent the loss Breon intended to cause by artificially inflating the property's price such that his loan or a future loan would not be repaid; or it could represent the gain to the conspiracy from the flipped property based on the profit from the sale.

Second, the record supports the district court's finding that Breon could have foreseen that his actions would cause a loss. As the court noted, Breon was a licensed mortgage broker so he could not have been as clueless as he claimed; he had been involved in transactions with Robinson in the past and must have known the type of transactions Robinson was involved in; it is reasonable to conclude that he knew that he was not being paid $50,000 for anything other than a fraudulent flip of the property; and his continued lies about the transaction during the investigation indicated that he was still involved in the conspiracy after he flipped the property to the next straw buyer. Further, testimony at trial indicated that Breon attempted to recruit another straw buyer to purchase the property from him.

Third, the record supports the district court's finding that Breon's actions caused either an actual or an intended loss. The loan Breon and his wife fraudulently obtained was fully repaid to their lender by a subsequent flip of the property. The third flip of the property, however, caused the third lender to

suffer a loss because the scheme fell apart, the loan remains unpaid, and its value was significantly greater than the property's actual value. Because Breon's flip of the property involved an artificial inflation of its price, the actual loss suffered by the subsequent lender was attributable, at least in substantial part, to Breon's crime. Further, the evidence in the record that supports the finding that Breon could foresee a loss also supports a finding that Breon was at least consciously indifferent to the possibility that his transaction would result in a loss, which is sufficient for a finding of an intended loss. *United States v. Morrow,* 177 F.3d 272, 301 (5th Cir. 1999). His sentence is AFFIRMED.