REVISED April 13, 2010

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 9, 2010**

Charles R. Fulbruge III
Clerk

No. 09-40140

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BRIAN KEITH HARPER,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:07-CR-244-4

Before CLEMENT, PRADO, and ELROD, Circuit Judges.

PER CURIAM:[*]

This appeal arises from the district court's entry of a judgment of conviction and its imposition of sentence on Defendant-Appellant Brian Keith Harper for one count of conspiring to possess five or more kilograms of cocaine with the intent to distribute in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. For the following reasons, we affirm.

---

[*] Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

## I. FACTUAL BACKGROUND

In November 2007, Drug Enforcement Administration (DEA) agents executed a search warrant at an apartment in Lewisville, Texas on suspicion that it was being used to store illegal narcotics.[1]  The search revealed several items  associated with cocaine trafficking and led to the arrest of Codefendant Gerrardo Javier Platas-Rodriguez.  When the DEA agents confronted Platas-Rodriguez, he agreed to cooperate with the investigation and informed the agents about a hidden compartment in the stairwell of the apartment.  The agents recovered fifty-seven bricks of cocaine, each weighing approximately one kilogram; $33,000 in cash; a money counter; freezer bags; and wrapping materials from the compartment.  Platas-Rodriguez told the agents that he had been hired to maintain the apartment as a stash house by Guadalupe Antonio Barrera, a friend in Mexico.

After Platas-Rodriguez informed the agents that another drug transaction was planned, the agents decided to conduct a controlled purchase using fake cocaine.  At the agents' request, Platas-Rodriguez contacted Barrera, who informed him that an individual, later identified as Codefendant Orlando Leal Martinez, would come from Mexico to represent Barrera in the sale of a quantity of cocaine.  On November 30, 2007, Martinez instructed Platas-Rodriguez to come to his hotel room early the next morning to await Barrera's instructions for completing the sale.

The next morning, Platas-Rodriguez and Martinez met at the apartment and then drove to an International House of Pancakes (IHOP) to meet the purchaser.  The agents observed a dual-wheel pickup with Tennessee plates towing a trailer enter the parking lot and later identified the driver as

---

[1] As Harper appeals the denial of his motion for a judgment of acquittal, we view "'the evidence and the inferences therefrom in the light most favorable to the verdict.'"  United States v. Fuchs, 467 F.3d 889, 904 (5th Cir. 2006) (quoting United States v. Anderson, 174 F.3d 515, 522 (5th Cir. 1999)).

Codefendant Frank Savage. Savage met briefly with Platas-Rodriguez and Martinez inside the IHOP before driving to a nearby hotel and checking in. Shortly afterwards, Savage returned to the IHOP and handed Martinez a piece of paper with his room number on it. Savage then drove back to the hotel, removed a suitcase containing $898,590 in cash from the trailer, and entered his room. Martinez also drove to the hotel and went to Savage's room with a suitcase containing the fake cocaine while Platas-Rodriguez remained in the parking lot. At this point, the agents arrested all three individuals.

Soon after his arrest, Savage began cooperating with the investigation. He told the agents that the money had belonged to Harper and that he was supposed to take the drugs to Harper. After Savage agreed to try to contact Harper, the agents retrieved a cellular telephone that Harper had given to Savage. Harper soon called and asked Savage what was going on. Harper indicated that he had been in contact with the seller and had learned that the seller's representative was not returning phone calls. Agent Don York, the lead case agent, recorded four brief conversations between Savage and Harper. During these conversations, Harper seemed to be concerned that something was amiss.

On December 13, 2007, Harper was arrested in Memphis, Tennessee. During an interview, Agent York asked Harper if he knew why the DEA agents were present. Harper responded that Savage was "putting [his] name out there about some dope that got hit." Harper admitted that he had previously sold marijuana and cocaine and that his current source of cocaine was a Hispanic man named "Red."

## II. PROCEDURAL BACKGROUND

A grand jury indicted Harper, Martinez, Platas-Rodriguez, Savage, and Savage's girlfriend, Sharif Ellis, on one count of conspiring to possess five or more kilograms of cocaine with the intent to distribute in violation of 21 U.S.C.

§ 846 and 18 U.S.C. § 2. After Harper pleaded not guilty, but before trial, the government notified Harper of its intent to introduce evidence of three extraneous offenses:

(1)    Harper's 1989 arrest and guilty plea for the possession of a controlled substance, which resulted in three years of probation;

(2)    His 1990 arrest and guilty plea for the unlawful possession of a narcotic, which resulted in a $300 fine; and

(3)    His 1993 arrest for drug distribution and guilty plea for the possession of crack cocaine, which resulted in a nine-month jail sentence.

Harper filed a motion in limine, requesting a hearing to determine the admissibility of this evidence under United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (en banc), which the district court granted. After the hearing, the court determined that the evidence was admissible. On the morning of trial, the district court denied Harper's motion for a continuance. The district court also denied Harper's motion to strike the jury panel or, in the alternative, to grant a continuance on the ground that the jury panel was not drawn from a fair cross-section of the community, in violation of the Sixth Amendment and Due Process Clause of the Fifth Amendment.

At trial, the prosecution introduced the recorded conversations between Savage and Harper through the testimony of Agent York, who identified the voice as Harper's based on his interview with Harper after his arrest in Memphis. Agent York also defined several code words used in these conversations, which he had learned from his involvement with the investigation. At the completion of the trial, the jury found Harper guilty. The district court denied Harper's motion for judgment of acquittal and sentenced him to thirty years of imprisonment, followed by ten years of supervised release.

## III. DISCUSSION

We have jurisdiction under 28 U.S.C. § 1291. Harper appeals his conviction, arguing that several of the district court's evidentiary decisions were erroneous. Harper also contends that the district court should have granted his motions for a continuance and his motion to quash the jury panel. In addition, Harper argues that the district court committed several errors during voir dire and that it should have granted his motion for a judgment of acquittal.

## A. Admissibility of Harper's Prior Offenses

We review a decision to admit evidence of prior offenses under Federal Rule of Evidence 404(b) using a heightened abuse of discretion standard. United States v. McCall, 553 F.3d 821, 827 (5th Cir. 2008). Pursuant to this standard, the evidence must be "'strictly relevant to the particular offense charged.'" United States v. Jackson, 339 F.3d 349, 354 (5th Cir. 2003) (quoting United States v. Hays, 872 F.2d 582, 587 (5th Cir. 1989)).

Rule 404(b) excludes evidence of extrinsic "bad acts" to prove a defendant's bad character. Fed. R. Evid. 404(b). Such evidence may, however, be admissible "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. In Beechum, this court set forth a two-step test for determining whether extrinsic evidence is admissible. 582 F.2d at 911. Before a district court may admit extrinsic evidence of a prior offense, "it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [Federal Rule of Evidence] 403." Id.

The government argues that the admission of the prior offenses satisfies the first prong of the Beechum test because Harper placed his intent at issue by pleading not guilty. This court permits the introduction of extrinsic evidence to prove criminal intent when a defendant enters a plea of not guilty, thereby

requiring the government to prove the elements of its case.[2] McCall, 553 F.3d at 827–28. The crime with which Harper was charged, conspiracy to possess cocaine with the intent to distribute, required the government to prove that Harper had the intent to join the conspiracy. United States v. Garcia Mendoza, 587 F.3d 682, 689 (5th Cir. 2009). Evidence of Harper's past drug transactions is relevant to establish his criminal intent. Id. Therefore, the evidence of Harper's prior offenses satisfies the first requirement under Beechum.

The second prong of the Beechum test requires that the evidence meet the general requirements of Rule 403 and that its probative value not be substantially outweighed by its unduly prejudicial effect. This court has "consistently . . . held that evidence of a defendant's prior conviction for a similar crime is more probative than prejudicial and that any prejudicial effect may be minimized by a proper jury instruction." United States v. Taylor, 210 F.3d 311, 318 (5th Cir. 2000). The record in this case reveals that the district court took great care to mitigate the prejudicial effect of the prior offenses. The district court limited the evidence to the judgment from each offense and Harper's stipulation as to the narcotic involved in each case. When the government introduced the evidence, the district court provided a detailed instruction to the jury as to the limited purposes for which the prior offenses were admitted. In its final instructions to the jury, the district court also gave the instruction regarding Rule 404(b) evidence found in the pattern jury instructions for the Fifth Circuit. See Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 1.30 (West 2001). In light of our precedent and the district court's efforts to

---

[2] During oral argument, Harper's counsel argued that the government was on notice that Harper was not placing his intent at issue because his defense was "centered around identity." While the opening statement of Harper's trial counsel did indeed focus primarily on the issue of identity, this falls far short of "'enforceable pre-trial assurances that he intend[ed] not to dispute criminal intent.'" McCall, 553 F.3d at 828 (alteration in original) (quoting United States v. Webb, 625 F.2d 709, 710 (5th Cir. 1980)).

mitigate the prejudicial effect of the prior offenses, the district court did not abuse its discretion in admitting the extrinsic evidence. See Garcia Mendoza, 587 F.3d at 689.

Harper also argues, for the first time on appeal, that the government and the district court erroneously characterized two of his prior offenses. As these issues were not raised before the district court, we review for plain error only. United States v. Jasso, 587 F.3d 706, 709 (5th Cir. 2009). "This court finds plain error when: (1) there was an error; (2) the error was clear and obvious; and (3) the error affected the defendant's substantial rights." Id. (internal quotation marks and citations omitted). Harper argues that his 1989 offense was improperly characterized as a conviction when in fact it was a deferred adjudication. The government concedes the error, but emphasizes that the prosecution, district court, and defense counsel all made the same error and that the mischaracterization was not intentional. Harper presents no authority for the proposition that the use of the term "conviction" for his 1989 offense constitutes plain error. We hold that the mischaracterization did not affect Harper's substantial rights and was not plain error.

Harper maintains that his 1990 offense did not actually involve a conviction for a controlled substance. This argument lacks merit. Harper stipulated to the narcotic involved in the offense and did not object when the judgment of conviction was presented to the jury with his stipulation. Moreover, the document admitted regarding Harper's 1990 offense indicates that he pleaded guilty to possession of cocaine. There was no error arising from the introduction of Harper's 1990 conviction.

B. Harper's Motion for a Continuance

Harper argues that the district court abused its discretion when it denied his oral motion for a continuance made on the first day of trial. This court reviews a district court's denial of a motion for continuance for an abuse of

discretion that results in serious prejudice. United States v. German, 486 F.3d 849, 854 (5th Cir. 2007). "Factors we consider when determining whether a continuance was warranted are: the amount of time available for preparation; defendant's role in shortening the time needed; the likelihood of prejudice from denial; and the availability of discovery from the prosecution." United States v. Messervey, 317 F.3d 457, 462 (5th Cir. 2002) (citing United States v. Uptain, 531 F.2d 1281, 1286–87 (5th Cir. 1976)). At trial, Harper asserted three justifications for a continuance, each of which he reurges on appeal.

Harper first argues that a continuance was merited to allow him to retrieve potentially exculpatory recorded statements made by Savage.[3] On the day before trial, Harper's attorney discovered that Savage had made calls from a state jail, which had been recorded by the phone company, that exculpated another codefendant. The phone company informed Harper's counsel that it could probably retrieve the recordings, but not without difficulty and some delay. On the first day of trial, Harper's counsel presented the government with those recordings he had obtained. In response to the district court's inquiry, the government denied having possession of any other recordings. The district court ultimately rejected, without comment, Harper's argument that the need to obtain these other recordings merited a continuance.

Harper has failed to show that the district court's decision resulted in "serious prejudice." German, 486 F.3d at 854. The need to investigate an opposing witness's prior statements can justify a continuance if linked to specific evidence, but a "speculative argument" about "the possibility of additional inconsistent statements" is insufficient. Id. Harper's counsel had a year to

---

[3] Harper attempts to characterize this issue as a violation of the prosecution's obligation to disclose exculpatory information under Brady v. Maryland, 373 U.S. 83 (1963). However, he did not raise a Brady claim in the district court, and we do not consider such claims when they are raised for the first time on appeal. United States v. Skilling, 554 F.3d 529, 568 n.63 (5th Cir.), cert. granted, 130 S. Ct. 393 (2009).

investigate these statements before trial. This weighs against a finding of prejudice. See Messervey, 317 F.3d at 462. In addition, Harper had already requested and received four continuances. See United States v. Walters, 351 F.3d 159, 170 (5th Cir. 2003) (upholding denial of continuance to investigate exculpatory information where defendant had previously been granted two continuances). Moreover, Harper has failed to uncover exculpatory evidence since the denial of his motion. See German, 486 F.3d at 854 (observing that the defendants' inability to point to any newly discovered exculpatory evidence undercut their argument that the district court erred by denying their motion for a continuance). In light of these circumstances, the district court did not abuse its discretion when it denied Harper a continuance on this ground.

Harper next argues that a continuance was merited to allow him to retrieve evidence to rebut Platas-Rodriguez's testimony. Before trial, Harper told his attorney that Platas-Rodriguez could not identify him and therefore could not link him to the conspiracy. Two days before trial, Harper's counsel asked the prosecutors whether Platas-Rodriguez could identify Harper; they responded with uncertainty and told Harper's counsel that they would interview Platas-Rodriguez and respond at a later date. On the day before the trial, the prosecution informed Harper's counsel that Platas-Rodriguez could identify Harper because the two had met on three prior occasions, including once on a trip to Mexico. Harper argued that a continuance was necessary in order to obtain Harper's records of travel to Mexico. In response to this argument, the district court made the following factual findings:

> I don't find that there's any surprise here other than that you were never told for sure that [Platas-Rodriguez] would identify your client. But you were certainly never told that he wouldn't identify your client. So he's just like any other witness. And if you had wanted to confirm that, you could have done that earlier.

The district court then denied the motion for a continuance.

In light of these findings, we cannot say that the district court abused its discretion by denying the motion for a continuance on this ground. Harper has not demonstrated that he was unfairly surprised when the government revealed that Platas-Rodriguez could identify him. Consequently, he has not shown that the denial of his motion resulted in serious prejudice. See German, 486 F.3d at 854; Messervey, 317 F.3d at 462.

Harper also asserts, for the first time on appeal, that the government's filing of a motion in limine on the day of trial merited a continuance. We review this issue for plain error. Jasso, 587 F.3d at 709. Harper claims that the late filing left him unable to defend against the motion. At the time of the motion, however, Harper failed to indicate that he was unprepared to defend against it and did not request a continuance on this basis. When the district court asked Harper's counsel if he "had a chance to look at" the motion, Harper's counsel replied "Yes I have, Your Honor." Harper's counsel also stated that the motion for a continuance was a "totally separate issue" from the motion in limine. The district court did not commit plain error by not granting a continuance on this basis.[4]

C. Harper's Fair Cross-Section Claim

"The Sixth Amendment and the Due Process Clause of the Fifth Amendment require that a jury be drawn 'from a fair cross-section of the community.'" United States v. Williams, 264 F.3d 561, 567 (5th Cir. 2001)

---

[4] In his opening brief, Harper claims that he was prejudiced by the late arrival of the government's "Notice of Sentence Enhancement." We do not address this claim, as Harper has dedicated little more than one sentence to it and makes no specific argument as to why the notice caused him prejudice. See Davis v. Maggio, 706 F.2d 568, 571 (5th Cir. 1983) ("Claims not pressed on appeal are deemed abandoned.") (citation omitted); cf. F.D.I.C. v. Mijalis, 15 F.3d 1314, 1327 (5th Cir. 1994) ("[I]f a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court.").

(quoting Taylor v. Louisiana, 419 U.S. 522, 527 (1975)). Harper claims that these rights were violated because only two of the forty-six prospective jurors were African-American. In order to establish a prima facie violation of the fair cross-section requirement, Harper must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

Williams, 264 F.3d at 568 (quoting Duren v. Missouri, 439 U.S. 357, 364 (1979)). If Harper makes out a prima facie case, the burden shifts to the government to demonstrate that attainment of a fair cross section is incompatible with a significant state interest. Duren, 439 U.S. at 368.

Harper challenges the district court's denial of his motion to strike the jury panel, arguing that he had presented a sufficient prima facie cross-section claim. When a district court denies a defendant's motion to strike a jury panel, we review the district court's factual findings for clear error and its conclusions of law de novo. United States v. Alix, 86 F.3d 429, 434 (5th Cir. 1996). In this instance, the district court rejected Harper's claim after finding that he had failed to present "any evidence that this jury was selected by some method other than the jury plan that has been approved by [the United States District Court for the Eastern District of Texas] and the Fifth Circuit Judicial Council." The district court ruled that "[a]bsent some evidence that this panel was improperly chosen, the court is going to deny your motion to quash this panel and dismiss the panel."

We find no error in this holding. The district court correctly ruled that Harper had failed to establish a prima facie cross-section claim because he provided no evidence of the relationship between the representation of African-Americans on the venire and the number of African-Americans in the relevant

community. "[A] defendant cannot establish a prima facie violation of the fair-cross-section requirement by relying solely on the composition of the jury panel at his own trial." Alix, 86 F.3d at 434 n.3 (citing Timmel v. Phillips, 799 F.2d 1083, 1086 (5th Cir. 1986)); accord United States v. Olaniyi-Oke, 199 F.3d 767, 773 (5th Cir. 1999). Instead, Harper must demonstrate that the percentage of African-Americans in the community differs from the composition of the venires drawn from the judicial district. See Williams, 264 F.3d at 568–69 ("Absent evidence of the percentage of African-Americans in the community, we have no baseline against which to compare the composition of Defendant's venire."). On appeal, Harper again relies solely on the composition of his own panel to make his prima facie case. This is legally insufficient to meet the requirements of the Duren test.[5] Alix, 86 F.3d at 434 n.3.

Harper also contends that even if he had failed to make a prima facie case, the district court should have granted him a continuance to allow him to research and brief the issue. We review this issue for abuse of discretion resulting in serious prejudice. German, 486 F.3d at 854. The district court does not appear to have addressed the request for a continuance apart from ruling on the merits, and the government does not address it in its brief. However, our prior decision in Alix, 86 F.3d at 435, is instructive. There, the defendant became suspicious of the venire's racial profile during jury selection and sought a continuance to investigate the racial makeup of the jurisdiction. Id. at 433–34. The district court denied the motion, and we affirmed, concluding that "[i]n light of the district court's findings, and especially in light of [the defendant's] failure

---

[5] The same failure also defeats Harper's parallel Equal Protection claim alluded to in the briefing of his Sixth Amendment claim. See United States v. McKinney, 53 F.3d 664, 671 (5th Cir. 1995) ("The disparity between 2.28% eligible African-American population, and no African Americans on the venire panel does not raise the inference that racial discrimination rather than chance produced the result." (citing Alexander v. Louisiana, 405 U.S. 625, 630 (1972))).

to present any evidence to the contrary, we hold that the district court did not abuse its discretion when it denied [the defendant's] motion for a continuance." Id. at 435. The district court in *Alix* made the following findings:

> I do not feel it's in the best interest of justice to grant the motion to have that type of delay in this trial. Again, while you may conduct those studies, surveys, or whatever, I am not convinced that they would indicate or prove that any of the irregularities that you are concerned with have actually happened or taken place. I am not convinced that, at least from my knowledge of the racial makeup of the Victoria Division that the Jury would be any different if we struck this panel and summoned a new panel. I think that we have selected these potential jurors in manner that has been used throughout the Southern District. I am not aware of any irregularities involved in that process.

Id. at 435 n.4. The district court in this case likewise made specific findings that Harper had failed to present any evidence that the jury was selected in a manner other than that which had been approved by the district court and the Fifth Circuit Judicial Council. And like the defendant in *Alix*, Harper has not identified any evidence that he might have been able to discover had the continuance been granted. Therefore, we hold that the district court did not abuse its discretion when it denied Harper's motion for a continuance.

D. Adequacy of the Voir Dire

We review challenges to the scope of voir dire proceedings under an abuse of discretion standard. *United States v. Munoz*, 150 F.3d 401, 412 (5th Cir. 1998). "The district court has broad discretion in determining how best to conduct voir dire and in deciding whether to excuse a juror," and "[a] court abuses its discretion when the scope of voir dire is inadequate to discover bias and deprives the defendant of an opportunity to make reasonable use of peremptory challenges." *United States v. Greer*, 968 F.2d 433, 435 (5th Cir. 1992) (en banc) (per curiam) (citations omitted). Harper challenges the district court's voir dire on two grounds. First, he argues that the district court abused

13

its discretion by refusing his request to ask the veniremembers general questions about their education and their children. Second, Harper contends that the district court allowed the prosecutor to mislead the jury during voir dire.

Harper submitted a proposed written voir dire questionnaire with several questions, including one that sought information regarding the veniremembers' level of education, and one that sought information regarding the sex, age, and occupation of the veniremembers' children. During a pretrial hearing, the district court voiced concern that the questions were "too personal" and "encouraged comparing jurors with each other." The district court stated that it "didn't want anybody to feel embarrassed who comes here for jury service." The district court later entered an order denying Harper's request to submit the questionnaire, noting that many of the questions in the questionnaire were customarily asked by the district court.

During voir dire, the district court permitted the parties to question individual members regarding personal matters, some of which involved the veniremembers' children. The district court began by asking the members of the venire a set of nine basic questions. Afterwards, the parties were allowed to pose questions to the group, with follow-up questions for individual members of the venire. The examination explored the venire for bias, and elicited a free and open exchange between the venire, the district court, and counsel. The district court and the parties asked the members of the venire whether they knew anyone who had prior involvement with drugs or who worked in law enforcement. The district court and the parties also asked the veniremembers whether they knew anyone associated with the case and whether their personal beliefs would interfere with their impartiality. Harper challenged three prospective jurors for cause, all of which the district court granted. Harper did not object to the jury that was empaneled.

Under these facts, the district court did not abuse its discretion by denying Harper the opportunity to submit his proposed questionnaire. A district court's failure to ask a proposed question does not constitute an abuse of discretion if the overall voir dire examination and the instructions given at trial adequately protect a party's interests. United States v. Harper, 527 F.3d 396, 409–10 (5th Cir. 2008); United States v. Williams, 573 F.2d 284, 287 (5th Cir. 1978). The proper test is whether the district court's "inquiry reasonably assured that any bias or prejudice against [Harper] would have been discovered if present." United States v. Quiroz-Hernandez, 48 F.3d 858, 869 (5th Cir. 1995). Having reviewed the record in this case, we are satisfied that this standard was met.

Harper next argues that the district court permitted the prosecutor to mislead the jury during voir dire. To the extent that Harper objected to the conduct of the voir dire, our review is for abuse of discretion. Munoz, 150 F.3d at 412. Alleged errors that were not preserved for review by a timely objection are reviewed for plain error. United States v. Fambro, 526 F.3d 836, 847 (5th Cir.), cert. denied, 129 S. Ct. 625 (2008). Harper's first objection came after the government described the crime of conspiracy as follows:

> A conspiracy is an illegal agreement. It's not violating the law, it's an agreement to violate the law. It's the defendant and one other person on one occasion entering into an agreement to break the law . . . . The defendant has to enter into it voluntarily, willfully, with the intent to further the agreement.

Harper objected to this characterization, arguing that there must be "an [overt] act in furtherance of [the conspiracy]." This argument is without merit; conspiracy under 21 U.S.C. § 846 requires no overt act. United States v. Shabani, 513 U.S. 10, 11 (1994) ("This case asks us to consider whether 21 U.S.C. § 846, the drug conspiracy statute, requires the Government to prove that a conspirator committed an overt act in furtherance of the conspiracy. We conclude that it does not.").

15

Harper's second objection came when the prosecutor examined the members of the venire regarding testifying codefendants. Harper objected that the prosecutor's inquiry was "getting into the internal operating procedures of the United States Attorney's Office, committee meetings and things." The district court sustained that objection and limited the government's discussion of that topic. On appeal, Harper argues that this line of questioning also confused the venire to the point that the potential jurors were unable to understand that the government was referring to cooperating witnesses. This objection was never raised before the district court, however, and the district court did not commit plain error by allowing the inquiry after limiting its scope.

Other than these two objections, Harper presents only a running description of the proceedings without specific argument. By failing to adequately brief these issues, Harper has waived them. United States v. Skilling, 554 F.3d 529, 568 n.63 (5th Cir.), cert. granted, 130 S. Ct. 393 (2009).

E. Agent York's Testimony

Harper argues that the district court improperly admitted audio tapes of conversations between himself and Savage based on the testimony of Agent York, who recorded them. Harper also argues that the district court erred in permitting Agent York to testify about his understanding of the contents of the conversations. We review a district court's determination of the admissibility of evidence under a heightened abuse of discretion standard. United States v. Yanez Sosa, 513 F.3d 194, 199–200 (5th Cir. 2008).

The admissibility of opinions by lay witnesses is governed by Federal Rule of Evidence 701, which provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based

on scientific, technical, or other specialized knowledge within the scope of Rule 702.

"Testimony by a witness that he recognized the accused by his voice is admissible, provided that the witness has some basis for comparison of the accused's voice with the voice which he has identified as that of the accused." United States v. Ladd, 527 F.2d 1341, 1343 (5th Cir. 1976) (citation omitted); see also United States v. Lampton, 158 F.3d 251, 259 (5th Cir. 1998) (holding that it was not an abuse of discretion for the district court to permit an FBI agent to identify the voice of the defendant based on prior personal contact with him). Once the basis for voice identification is established, it is up to the jury to decide whether the testimony is credible and how much weight to give it. United States v. Mendoza, 522 F.3d 482, 489 (5th Cir.), cert. denied, 129 S. Ct. 269 (2008).

Similarly, an agent may offer lay testimony of his opinions concerning the meaning of terms used by drug dealers if those opinions are based on his personal perceptions from the investigation. See United States v. Miranda, 248 F.3d 434, 441 (5th Cir. 2001) ("[The agent's] extensive participation in the investigation of this conspiracy . . . allowed him to form opinions concerning the meaning of certain code words used in this drug ring based on his personal perceptions."); see also United States v. Rollins, 544 F.3d 820, 831–32 (7th Cir. 2008) ("We find that the trial judge did not err in concluding that [the agent's] 'impressions' testimony was rationally based on his first-hand perception of the intercepted phone calls about which he testified as well as his personal, extensive experience with this particular drug investigation.").

The district court did not abuse its discretion by admitting the tapes of Harper's conversations with Savage through Agent York's testimony. Agent York's interview with Harper in Memphis provided him with a "basis for comparison of [Harper's] voice with the voice . . . he . . . identified as that of [Harper]." Ladd, 527 F.2d at 1343 (citation omitted). Agent York's impressions

of the meanings of some of the terms in the recorded conversation were likewise properly admitted. Having served as the lead agent in the investigation, Agent York became familiar with the drug ring. He participated in the search at the apartment, interviewed Platas-Rodriguez, helped to set up the sting operation, and was interviewing Savage when the conversations with Harper were recorded. This experience is sufficient to render his testimony admissible under Rule 701. See Miranda, 248 F.3d at 441.[6]

F. Prosecutor's Closing Argument

Harper's last argument focuses on allegedly improper comments made by the prosecutor during her closing argument. As Harper did not raise the issue of the prosecution's closing argument before the district court, our review of that issue is for plain error only. United States v. Munoz, 150 F.3d 401, 415 (5th Cir. 1998). We take a two-step approach in reviewing a charge of prosecutorial misconduct during closing argument. Id. at 414. We first decide whether the prosecutor made an improper remark. Id. (citation omitted). If a statement was improper, we then consider whether it prejudiced the defendant's substantive rights. Id. at 415 (citation omitted). In making this determination, we assess "'(1) the magnitude of the statement's prejudice, (2) the effect of any cautionary instructions given, and (3) the strength of the evidence of the defendant's guilt.'" Id. at 415 (quoting United States v. Tomblin, 46 F.3d 1369, 1389 (5th Cir.1995)).

Harper claims that the prosecutor improperly commented on his post-arrest silence during closing argument. It is the general rule that a prosecutor may not argue that a jury should infer a defendant's guilt from his post-arrest

---

[6] Harper also argues that the district court permitted Agent York to render legal conclusions regarding two assets that were seized. Harper did not raise this objection at trial and Agent York's testimony conveyed facts rather than legal conclusions. The district court did not plainly err in admitting this testimony.

silence. United States v. Rodriguez, 260 F.3d 416, 420–21 (5th Cir. 2001) (citation omitted). In this instance, the prosecutor made the following statement regarding Harper's interview with Agent York:

> Again it's important what Brian Harper doesn't say at this point. "What do you mean? What load got knocked off? Why wouldn't he work with me? What load got knocked off." Never says that. Doesn't say anything. He says, "Maybe. He might keep working with me." An admission? Oh you bet. What you don't say is just as important as what you do say.

In United States v. Laury, we found that the prosecution had improperly used the defendant's post-arrest silence to impeach him. 985 F.2d 1293, 1303 (5th Cir. 1993). In that case, the defendant had made statements to the FBI, but did not mention his whereabouts at the time of the alleged robbery. Id. We held that the prosecution impermissibly used the defendant's statements on those unrelated issues to discredit his alibi. Id. We noted that although the defendant "did not remain completely silent following his arrest" the prosecutor did not have "unbridled freedom to impeach [him] by commenting on what he did not say following his arrest." Id. at 1304 n.10.

Harper also contends that the prosecutor improperly vouched for the credibility of certain trial witnesses. "[A] personal assertion by a prosecutor of a government witness's credibility is impermissible." United States v. Gracia, 522 F.3d 597, 601 (5th Cir. 2008) (citation omitted). Harper points to seven statements made by the prosecution that he alleges improperly bolstered the credibility of certain witnesses for the government. The first two statements occurred while the prosecutor argued to the jury that Savage had been truthful. The prosecutor asked the jury to "imagine the fear and panic" experienced by Savage at the moment of his arrest and then infer that Savage was "going to the tell the truth." The prosecutor then argued that it would be "quite a sophisticated lie on Frank Savage's part" to falsely implicate Harper "within an

hour of his very stressful arrest" and asserted that the jury should infer that Savage was "telling the truth." The third statement was made while the prosecutor was explaining that Savage had honestly told the agents that a particular photograph did not depict Harper. The prosecutor observed: "Frank Savage, just like he has all along, told the truth and he said, '[n]o that is not [Harper].'" These statements give us some pause, as they could be read as "personal assertion[s]" of Savage's credibility. Gracia, 522 F.3d at 601.

The fourth, fifth, and sixth statements make up a large part of the prosecution's argument that the testimony of Platas-Rodriguez was consistent with Savage's testimony and we do not recite them in their entirety. Having reviewed the entire exchange, however, we conclude that the prosecutor's arguments highlighted the consistencies between Platas-Rodriguez's and Savage's testimony, and urged the jury to infer that both men were being truthful. "[A] prosecutor may recite to the jury those inferences and conclusions [she] wishes them to draw from the evidence so long as those inferences are grounded upon the evidence." United States v. Loney, 959 F.2d 1332, 1343 (5th Cir. 1992).

The seventh comment was made as part of the prosecution's rebuttal argument. Harper's counsel had previously argued to the jury that the government had been dilatory in interviewing Savage and playing the recorded conversations for him. The prosecution responded:

> [i]n terms of when to interview the witnesses and when to investigate the case, if we talked to the witnesses five or six times, imagine what the flip-side of that argument would be . . . . The flip-side of the argument would be that we were over there coaching him. We weren't. We asked them to tell us the truth, and that is what they told us.

We are somewhat troubled by the prosecutor's use of the first-person pronoun. This statement arguably suggests that the prosecutor had additional knowledge

that Savage was telling the truth based on her out-of-court interactions with him.

Even if we conclude that some of the prosecutor's comments "fell beyond the bounds of permissible behavior," they did not prejudice Harper's substantive rights. Munoz, 150 F.3d at 415. The district court instructed the jury immediately before closing argument that "any statements, objections, or arguments made by the lawyers are not evidence." This cautionary instruction mitigated any prejudicial effect of the prosecutor's comments. See id. (citing United States v. Lokey, 945 F.2d 825, 837 (5th Cir. 1991)). As Harper has failed to demonstrate prejudice to his substantial rights, he cannot obtain relief under the plain error standard. United States v. Pillado-Chaparro, 543 F.3d 202, 205 (5th Cir. 2008).

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.