**UNITED STATES of America**

**v.**

**Christine Prince HAYES, Anthony D. Acri, III, and Earl Gordon Hall, Jr., Defendants.**

**EP–14–CR–2272–PRM**

United States District Court, W.D. Texas, El Paso Division.

Signed 02/10/2016

---

Anna Elizabeth Arreola, James Christopher Skillern, Robert Almonte, U.S. Attorney's Office, Robert Almonte, El Paso, TX, Joseph H. Gay, Jr., Kristy Karen Callahan, Steven E. Seward, San Antonio, TX, for United States of America.

Gary B. Weise, Michael R. Gibson, Louis E. Lopez, Jr. Attorney at Law, El Paso, TX, for Defendants.

Earl Gordon Hall, Jr., El Paso, TX, pro se.

## MEMORANDUM OPINION AND ORDER DENYING CONTINUANCE OF TRIAL DATE

PHILIP R. MARTINEZ, UNITED STATES DISTRICT JUDGE

On this day, the Court considered Defendant Christine Prince Hayes's "Motion for Continuance" (ECF No. 254) [hereinafter "Defendant Hayes's Second Motion"], filed on January 25, 2016; Defendant Earl Gordon Hall Jr.'s "Motion to Join Codefendant Hayes' Motion to Continue Trial Setting" (ECF No. 255) [hereinafter "Defendant Hall's Second Motion"], filed on January 25, 2016; Defendant Anthony D. Acri III's "Motion for Continuance of Trial Setting" (ECF No. 260) [hereinafter "Defendant Acri's First Motion"], filed on January 27, 2016;[1] and the Government's "Response to Defendant's Motion for Con-

---

1. Because, as discussed below in Section I *infra,* Defendants Hayes and Hall previously filed motions to continue the original trial setting in this case—which the Court granted—the Court will, hereinafter, collectively refer to Defendant Hayes's Second Motion, Defendant Hall's Second Motion, and Defendant Acri's First Motion as "Defendants' Second Set of Motions."

tinuance" (ECF No. 256) [hereinafter Government's First Response], filed on January 26, 2016, in the above captioned-cause.

Additionally, the Court considered Defendant Acri's "Motion to Continue Jury Trial Setting" (ECF No. 277) [hereinafter "Defendant Acri's Second Motion"], filed on February 3, 2016, and "Request for Permission to File Additional Motions" (ECF No. 282) [hereinafter "Request"], filed on February 4, 2016; Defendant Hall's "Motion to Continue Trial Setting" (ECF No. 278) [hereinafter "Defendant Hall's Third Motion"], filed on February 4, 2016, "Supplemented Motion to Continue Trial Setting" (ECF No. 281) [hereinafter "Defendant Hall's Fourth Motion"], filed on February 4, 2016, and "Motion to Continue Trial Setting or in the Alternative Strike the Government's Evidence Disclosed February 4, 2016" (ECF No. 283) [hereinafter "Defendant Hall's Fifth Motion"]; and Defendant Hayes's "Corrected Motion to Join Co–Defendants' Motion to Continue Trial Setting" (ECF No. 285)[2] [hereinafter "Defendant Hayes's Third Motion"], filed on February 4, 2016[3]; and the Government's "Response to Defendant's Motion for Continuance" (ECF No. 286) [hereinafter "Government's Second Response"], filed on February 5, 2016, and Defendant Hall's "Reply to Government's Response" (ECF No. 291), filed on February 5, 2016, in the above-captioned cause.

In their Second Set of Motions, Defendants requested that the Court grant a continuance of the trial setting in this case. Def. Hayes's Second Mot. 1; Def. Hall's Second Mot. 1; Def. Acri's First Mot. 1. After the Court held a hearing on all pretrial motions, including Defendants' Second Set of Motions to continue the trial setting, on February 2, 2016 ("February 2016 Hearing"), the Court denied these motions, indicating that a memorandum opinion and order would be forthcoming. Defendants subsequently filed their Third Set of Motions, once again requesting that the trial date be continued. Def. Acri's Second Mot. 1; Request 1; Def. Hall's Third Mot. 1; Def. Hall's Fourth Mot. 1; Def. Hall's Fifth Mot. 1; Def. Hayes's Third Mot. 1.

After due consideration, the Court is of the opinion that trial should not be postponed and that Defendants Second and Third Set of Motions should be denied for the reasons set forth below.

## I. BACKGROUND

In December 2014, a grand jury indicted Defendants, *inter alia*, with conspiracy to defraud the United States. Sealed Indictment, Dec. 10, 2014, ECF No. 9. Shortly thereafter, the Court granted the unopposed motion to designate this case as complex. Order on Gov't's Mot. Toll Speedy Trial 1–2, Jan. 12, 2015, ECF No. 89.[4] Over a year later, after several at-

---

**2.** The Court notes that Defendant Hayes filed a "Motion to Join Co–Defendants' Motion to Continue Trial Setting" (ECF No. 280), on February 4, 2016. Because Defendant Hayes filed a corrected motion, the Court will only address Defendant Hayes's corrected motion.

**3.** The Court will, hereinafter, collectively refer to Defendant Acri's Second Motion, Defendant Hall's Third, Fourth, and Fifth Motions, and Defendant Hayes's Third Motion as Defendants' Third Set of Motions.

**4.** This designation allowed for the time between the designation and the next docket call to be tolled pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(8). Similarly, each subsequent continuance tolled the time between said continuances for purposes of the Speedy Trial Act. The case was designated as complex because of the time necessary to prepare for this case given "the volume of discovery," "including but not limited to written documents and reports " Order on Gov't's Mot. Toll Speedy Trial 1. Accordingly, Defendants and defense counsel were on notice,

tempts to set a trial date in this case and several continuances of the docket call hearings for each of the Defendants, the Court set jury selection for January 8, 2016, and trial for January 19, 2016. *See* Trial Letter, Nov. 18, 2015, ECF No. 205. Specifically, the Court continued the docket call hearing on four different occasions for Defendants Hayes and Hall and on three different occasions for Defendant Acri. *See* Order to Continue for Def. Hayes, Jan. 13, 2015, ECF No. 76; Order to Continue for Def. Hayes, Feb. 11, 2015, ECF No. 115; Order to Continue for Def. Hayes, May 15, 2015, ECF No. 149; Order to Continue for Def. Hayes, Aug. 19, 2015, ECF No. 171; Order to Continue for Def. Hall, Jan. 13, 2015, ECF No. 77; Order to Continue for Def. Hall, Feb. 11, 2015, ECF No. 117; Order to Continue for Def. Hall, May 15, 2015, ECF No. 151; Order to Continue for Def. Hall, Aug. 19, 2015, ECF No. 173; Order to Continue for Def. Acri, Feb. 11, 2015, ECF No. 116; Order to Continue for Def. Acri, May 15, 2015, ECF No. 150; Order to Continue for Def. Acri, Aug. 19, 2015, ECF No. 172.

After the Court set the trial date, Defendant Hayes, however, subsequently requested that the Court postpone jury selection from January 8, 2016, to January 15, 2016, because of the inconvenience and economic burden that the break between the jury selection date and the jury trial date would pose on Defendant Hayes, who resides in the Washington D.C. area. Mot. Postpone Jury Selection 1, Nov. 19, 2015, ECF No. 206 [hereinafter "Def. Hayes's First Motion"].

Additionally, defense counsel for Defendant Hall requested that the trial setting be continued because it conflicted with an-other jury trial for which he was serving as counsel. Am. Mot. for Continuance of Trial Setting and Notice of Unavailability for Louis Elias Lopez, Jr., Esq., Nov. 25, 2015, ECF No. 209 [hereinafter "Defendant Hall's First Motion"]. In Defendant Hall's First Motion, he indicated that "[a]ll parties ([G]overnment included) suggest the date of [February 22, 2016,] as being ideal to start the trial in this case." *Id.* at 4.

The Court convened a status conference and motions hearing regarding Defendant Hall's First Motion and Defendant Hayes's First Motion, on November 30, 2015 ("November 2015 Hearing"). *See* Order Setting Status Conference and Mot. Hr'g, Nov. 11, 2015, ECF No. 210. At the November 2015 Hearing, Defense counsel for each of the Defendants indicated that a jury selection and trial date of February 16, 2016, would give defense counsel adequate time to prepare and would not conflict with any of Defense counsel's schedules. Consequently, the Court granted Defendant Hall's First Motion and Defendant Hayes's First Motion—resetting both jury selection and trial for February 16, 2016. *See* Order Granting in Part and Denying in Part Defs. Christine Prince Hayes and Gordon Hall, Jr.'s Mots. and Resetting Jury Selection and Trial 3, Nov. 30, 2015, ECF No. 218.

Nevertheless, towards the end of January, 2016, Defendants subsequently filed their Second Set of Motions to continue the trial setting. *See* Def. Hayes's Second Mot. 1; Def. Hall's Second Mot. 1; Def. Acri's First Mot. 1. As noted above, the Court convened the February 2016 Hearing to address all pending pretrial motions, including Defendants' motions to continue

since the inception of this case, that this case would be complex and would involve a large volume of discovery. Yet, at the November 2015 hearing discussed, *infra*, each of the parties expressed that the current trial date would be acceptable and would afford them a sufficient amount of time to prepare for trial.

the trial setting. *See* Second Order Resetting Mots. Hr'g, Feb. 1, 2016, ECF No. 274. In the Court's order setting the February 2016 Hearing, the Court ordered that "neither the Government nor Defendants . . . may file any subsequent motions concerning pretrial matters without leave of Court." *See* Order Setting Mots. Hr'g 2–3, Jan. 28, 2016, ECF No. 267.[5]

Although Defendants initially disregarded the Court's order requiring that they seek leave of Court prior to filing any more pre-trial motions, Defendant Acri subsequently requested leave of Court to file such motions. *See* Req. 1. Therefore, the Court will address the substance of Defendants Third Set of Motions. Nonetheless, Defendants are reminded to seek leave of Court, in accordance with the Court's order, prior to filing any more pretrial motions.

## II. LEGAL STANDARD

▮▮ The decision whether to grant a continuance is within the sound discretion of the trial court. *United States v. Rounds*, 749 F.3d 326, 336 (5th Cir. 2014). "The judgment range [for such a decision] is exceedingly wide." *Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000). "Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling witnesses, lawyers, and jurors at the same place, at the same time, and this burden counsels against continuances except for compelling reasons." *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). The Fifth Circuit will "not substitute [its] judgment concerning the necessity of a continuance for that of the district court," *Hunter*, 221 F.3d at 736, and will only reverse a

district court's denial of a motion to continue where the defendant demonstrates that "he suffered serious prejudice," *Rounds*, 749 F.3d at 336. The Fifth Circuit considers the "totality of the circumstances," in assessing whether the district court abuses its discretion, including the following factors:

> (a) the amount of time available; (b) the defendant's role in shortening the time needed; (c) the likelihood of prejudice from denial; (d) the availability of discovery from the prosecution; (e) the complexity of the case; (f) the adequacy of the defense actually provided at trial; and (g) the experience of the attorney with the accused.

*Id.*

Defendants Second and Third Set of Motions are based on two main contentions: (1) the Government very recently, as late as February 4, 2016, produced discovery, which will require a significant amount of time to review and rebut and (2) two defense witnesses, who Defendants assert will provide "crucial testimony," will be unavailable. The Court finds that neither of these reasons justifies a continuance.

## III. ANALYSIS

### A. Discovery

The Court finds that a continuance is not warranted merely because of the recent discovery productions:

> [T]he United States has produced, and continues to produce on a rolling basis, interview reports written during the course of the investigation. To the extent that the reports do not fall within its *Brady* or *Giglio* discovery obligations,

---

5. Yet, Defendants filed several pretrial motions, including their Third Set of Motions without seeking leave of Court to file such motions. See Def. Hayes's Third Mot. 1; Def.

Hall's Third Mot. 1; Def. Hall's Fourth Mot. 1; Def. Hall's Fifth Mot. 1; Def. Acri's Second Mot. 1.

the production of these interview reports by the United States constitutes an early and inclusive (perhaps overly so) production of Jencks material[6], which it is under no obligation to do. *See United States of America v. Shahld Tahir*, No. 15–20351, 2016 WL 386433 at *3 (E.D. Mich. Feb. 2, 2016).

### 1. SBA Witnesses

■ Defendants request a continuance based on the Government's January 22nd and February 4th discovery production concerning Small Business Administration ("SBA") witnesses. The Court finds that the Government's January 22nd and February 4th discovery productions concerning SBA witnesses were only supplemental in nature, which the Government was under no obligation to produce at this juncture.[7] Indeed, Defendants were aware of, and had access to, a majority of the Government's discovery regarding the SBA investigation since a year ago when the Government initially commenced providing Defendants with discovery. Therefore, no continuance is warranted on this basis, and neither of the Government's SBA witnesses will be stricken.

#### a. Sam Q. Le

Defendants Hayes's Second Motion asserts that "[s]ince the date of the status conference, the Government has sent out significant discovery ultimately with [d]iscovery as late as Friday, January 22, 2016, reflecting a new witness from the [SBA] which will create significant time and effort for the Defense to [r]ebut." Def. Hayes's Second Mot. 1. Defendant Hayes claims that the "SBA witness reflected in

the January 22, 2016[,] discovery" "was not previously disclosed to the Defense [and] will presumably testify to potential extraneous offenses committed by Defendants when they were operating under SBA guidelines in 2011." *Id.* at 1–2.

Defendant Acri's First Motion also addressed the Government's production of discovery regarding Mr. Sam Le. Def. Acri's First Mot. 1–2. Specifically, Defendant Acri's First Motion alleges that the SBA suspended "Defendants' commercial companies and ventures ... from bidding on future government contracts for a period of time." *Id.* However, after the SBA completed an investigation, and found "no violations of procedures, government regulations or law," it notified Defendants that "the suspension prohibiting them from participating in solicitation of [G]overnment business had been lifted." *Id.* Yet, defense counsel for Defendant Acri states that he has learned, through recent discovery, that an employee of SBA—Mr. Sam Q. Le—"has made statements to the [G]overnment indicating his personal opinion that Defendants, through their corporate entities, were engaged in various unlawful activities." *Id.* Therefore, Defendant Acri's First Motion argues that defense counsel must now "investigate the disparity between a letter apparently obsolving [sic] Defendants of unlawful activity and the testimony of Mr. L[e]." *Id.*

The Government contends that both John Klein and Sam Le were identified on the Government's witness list filed on January 14, 2016. Gov't's First Resp. 3. Moreover, the Government asserts that it produced a letter from Mr. Klein to Defendant Acri over a year ago, in which

---

**6.** The Jencks Act mandates production of the following: "[A]ny statement in the possession of the United States which relates to the subject matter *as to which the witness has testified.*" 18 U.S.C. § 3500(b) (emphasis added).

Accordingly, the Government is not required to produce witness statements until after a witness testifies.

**7.** *See supra* note 5 and accompanying text.

Defendant Acri was suspended from Government contracting as well as a "lengthy disclosure letter" from Defendant Acri's company, addressed to the SBA, disclosing "the scheme that Defendant [Hayes] and her co-defendants are charged with in the Superseding Indictment." *Id.*

The Court finds that the Government's discovery production regarding SBA witness, Mr. Le, does not warrant a continuance. The Government timely disclosed its witness list to Defendants, which included Sam Le as a witness, on January 14, 2016. Gov't's Witness List, Jan. 14, 2016, ECF No. 237. Therefore, Defendants were put on notice, since January 14, 2016, that Mr. Le, another SBA employee, would be testifying.

Moreover, Defendants were aware, well over a year ago when the Government produced its initial discovery, that the Government would be introducing evidence and testimony regarding the SBA investigation of Defendants' business. This provided the Defendants with ample opportunity to investigate the SBA employees involved in the investigation of Defendants' business, to interview these witnesses, and to determine the need for rebuttal witnesses or evidence. The alleged discrepancy that Defendant Acri now believes warrants further investigation and a continuance is a matter that may be addressed at trial, during defense counsel's cross-examination of Mr. Le: defense counsel is free to question Mr. Le regarding the alleged discrepancy between the SBA letter "[a]bsolving Defendants of unlawful activity" and any contradictory testimony. *See* Def. Acri's First Mot. 2.

### b. Mr. John W. Klein

Additionally, Defendant Hall asserts that "[o]n February 4, 2016, the government sent to all defendants, via email, additional discovery—specifically a report containing the summary of a January 28, 2016 interview of a Mr. John W. [Klein], Associate General Counsel for the [SBA]." Def. Hall's Fifth Mot. 1.[8] Defendant Hall asserts that this summary report contains Mr. Klein's statement that "in the 32 years he has been employed as Associate General he has never seen an entity or individual blatantly violate the 8a program such as [Defendant] ACRI and BAUM did." *Id.* at 2–3. Therefore, Defendant Hall claims that "in order to impeach Mr. [Klein's] blanket statement covering 30 years, they would need to have access to all section 8a violations Mr. [Klein] has been involved [in]." *Id.* at 3. Defendant Hall claims that "[w]ithout seeing all the investigation reports involving section 8a violations that involved [Klein], [D]efendants have no way to ascertain if he is saying the truth." *Id.*

The Government asserts that "Defendants ... cannot claim surprise ... regard[ing] ... the provision of an interview report which summarized a January 28, 2016[,] interview of John Klein." Gov't's Second Resp. 6. The Government contends that it "produced two letters from Mr. Klein that set out his findings in great detail" in its "initial production in January 2015." *Id.* Attached to one of the letters is an "exhaustive administrative record that provides a basis for Mr. Klein's suspension decision." *Id.* "The Government also produced a letter from Mr. Klein to ... the Chief Executive officer of the parent corporation that [Defendant] Acri was managing," which "provides great detail as to the reasons for [Defendant] Acri's suspension

---

**8.** Defendant Hall's Fifth Motion is misnumbered, therefore, the page numbers that the Court cites when referencing Defendant Hall's Fifth Motion correspond to the ECF's pagination.

from Government contracting activities." *Id.*

The Court finds that the February 4th production of the report summarizing the Government's interview with Mr. Klein does not warrant a continuance. The Government previously produced detailed information regarding Mr. Klein's findings during his SBA investigation of Defendants' business, and the Government produced a report summarizing the Government's interview with Mr. Klein, although it was not required to do so at this juncture.[9] The fact that the report summarizing Mr. Klein's interview indicates that Mr. Klein stated that "in the 32 years he has been employed as Associate General he has never seen an entity or individual blatantly violate the 8a program such as ACRI" does not warrant a continuance. *See* Def. Hall's Fifth Mot. 2–3.[10] The fact that defense counsel was not made aware of every aspect of Mr. Klein's testimony does not warrant a continuance. *See United States v. Harper*, 369 Fed.Appx. 556, 562 (5th Cir. 2010) (holding that the district court did not abuse its discretion in denying the defendant's motion for a continuance where defense counsel was informed the day before trial that a Government witness could identify the defendant because the two had met on prior occasions, including once on a trip to Mexico).[11]

9. *See supra* note 5 and accompanying text.

10. Defendant Hall's counsel alleges that he would require access to all investigations in which Mr. Klein has participated, spanning thirty-two years, to rebut this statement. *Id.* This argument fails because the admissibility of such a statement has not been determined. Indeed, defense counsel has the ability to challenge the admissibility of this alleged statement on several different grounds.

11. In *Harper*, the defendant "argued that a continuance was necessary in order to obtain [the defendant's] records of travel to Mexico." 369 Fed.Appx. at 562. The district court found

### 2. Ms. Kim Andrews

■ Defendant Hayes contends that "the Government also notified the Defense of a new witness, not previously disclosed, on January 12, 2016," "who will testify as to Defendant Hayes ['s] bad character with respect to her employment with KICD which involves possible extraneous offenses not charged in the indictment." Def. Hayes's Second Mot. 2.

The Government confirms that it did produce "two interview reports concerning Kim Andrews" on January 12: "One of the reports is one and one third pages in length and summarizes an interview conducted on January 6, 2016," and the "second report is approximately three pages in length and summarizes an interview conducted on September 12, 2013." Gov't's First Resp. 4. The Government argues that "Defendant [Hayes] fails to inform the Court that an interview report for Ms. Andrews was produced over a year ago as part of the initial discovery in this case that contains much of the same information that Defendant [Hayes] maintains requires a continuance." *Id.*

The Court finds that the Government's January 12th production of the interview reports regarding Ms. Andrews does not merit a continuance. These reports were merely supplemental to discovery already

that there was no "surprise," other than that the defendant was "never told for sure that [the Government witness] would identify [him]." *Id.* The district court noted that the defendant was "certainly never told that [the Government witness] would not identify [the defendant]. *Id.* Therefore, the district court found that he was "just like any other witness," and if the defendant "wanted to confirm that," he "could have done that earlier." *Id.* The Fifth Circuit held that, [i]n light of [the district court's] findings, [it] could not say that the district court abused its discretion by denying the motion for a continuance on this ground. *Id.*

produced regarding Ms. Andrews. Moreover, regarding "extraneous offenses," the Federal Rules of Evidence only mandates that the prosecution "provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial," "[o]n request by defendant." Fed. R. Evid. 404(b)(2). The prosecution is required to "do so before trial—or during trial if the court, for good cause excuses lack of pretrial notice." *Id.* Here, the Government provided Kim Andrews's interview reports well before trial, although not required to do so. Accordingly, Defendants cannot claim that production of these reports, four weeks prior to trial, will cause them substantial prejudice.

### 3. January 22, 2016 Discovery

■ Defense counsel for Defendant Hayes alleges that he was notified on January 22, 2016, of "additional [d]iscovery to be picked up from the U.S. Attorney's Office, which is in CD format and "has been encrypted by the Government and is extremely difficult to download." Def. Hayes's Second Mot. 2. Defense counsel for Defendant Hayes also alleges that he just recently reviewed business records that the Government produced on January 22, 2016, which he "had never been presented before that requires [him] to subpoena additional witnesses to rebut and of which [he] needs additional time to interview and subpoena." *Id.*

Similarly, Defense counsel for Defendant Acri asserts that [m]ost recently discovery was furnished to Defendant's counsel on . . . January 22nd in the form of a CD which was encrypted and could not be examined by Defendant's counsel." Def. Acri's First. Mot. 1. Therefore, "Defendant [Acri] avers that the massive discovery on a continuing basis by the [G]overnment has overwhelmed Defendant's counsel to the extent that additional time is required to assess the [G]overnment's discovery material and organize and plan a response thereto." *Id.*

The Government states that the January 22nd production were "bank account records for an account held by Defendant[s] [Hayes and Hall] that counsel for the Government became aware of following the indictment of this case." Gov't's First Resp. 5. Furthermore, the Government asserts that the "records are not voluminous," containing "a business records affidavit, account statements and check images for a four-month period and can be reviewed in a short amount of time." *Id.*

Additionally, the Government contends that Defendant Hayes's counsel's assertion that he received business records on January 22, 2016, which he had "never been presented before" is inaccurate. *Id.* The Government "produced business records declarations along with the corresponding business records," on November 19, 2015. *Id.* "The corresponding records were produced to Defendant on January 14, 2015[,] and February 6, 2015." *Id.* The Government also "produced additional business declarations along with corresponding business records [on January 12, 2016]." *Id.* Finally, on January 22, 2016, "the Government produced a single business records declaration with twenty-eight pages of corresponding contract documents." *Id.* The Government asserts that these "contract documents were first produced to Defendants over a year ago on January 14, 2015." *Id.*

The Court finds that the Government's January 22nd production of business and bank account records does not warrant a continuance. The documents that the Government produced were also supplemental to the business records and declarations the Government provided Defendant over a year ago. Moreover, even if these documents contain "new information," which will require time to review and rebut, the

Government produced this discovery twenty-four days before trial. The Court finds that twenty-four days is sufficient to review, investigate, and rebut the documents that the Government produced. *See United States v. Lewis*, 476 F.3d 369, 387 (5th Cir. 2007) (holding that the district court did not abuse its discretion in denying a defendant's motion for continuance of the trial date where defense counsel was appointed *ten* days before trial in a "complex" case involving "ten defendants, even more witnesses, and voluminous discovery"); *see also United States v. Stalnaker*, 571 F.3d 428, 439 (5th Cir. 2009) (holding that the district court did not abuse its discretion in denying a defendant's motion for continuance) ("Although she points to no specific prejudice, [the defendant] generally argues that 'this was a complex, massive document intense case that required numerous hours of preparation, review and research .... There is no indication of substantial prejudice.").[12]

#### 4. Attorney Barbra Werther

■ Defendant Acri also claims that on February 4, 2016, the Government sent an email to defense counsel containing a new FBI report of Barbara G. Werther, an attorney who drafted contracts for Defendants in this case. Req. 1. Defendant Acri claims that "this discovery introduces brand new matters." *Id.* at 2.

The Government contends that "the interview report of Barbara Werther summarizes an interview that was conducted on January 28, 2016." Gov't's Second Resp. 5. The Government asserts that "[p]rior to interviewing Ms. Werther, the Government requested from Defendants their views as to whether they had an attorney-

client relationship with Ms. Werther and inquired as to whether they would be willing to waive any claim of privilege." *Id.* "Defendants responded in early January by waiving any claim to privilege." *Id.* at 6. Therefore, the Government claims that "Defendants were on notice that the Government intended to interview Ms. Werther." *Id.* Additionally, the Government sent Defendants Ms. Werther's sworn declaration, on January 29, 2016. *Id.* The Government avers that the "interview report contains essentially the same information that is contained in the sworn declaration." *Id.* Consequently, the Government argues that "Defendants should not be permitted a continuance because they received a report summarizing an interview of their own witness." *Id.* at 7.

The Court finds that the February 4th production of Ms. Werther's FBI report does not warrant a continuance. Defendants named Ms. Werther as a witness in their witness list, therefore, Defendants cannot claim any surprise regarding Ms. Werther's testimony. Furthermore, to the extent that the FBI report contains any new or contradictory information to the testimony that Defendants anticipated, Defendants can cross-examine Ms. Werther regarding such discrepancies during trial.

#### 5. Recordings

■ Defendant Acri also claims that, on February 4, 2016, the Government sent his defense counsel an e-mail, "advising that several calls made by ... Defendant Hall to ... apparently a relative, from the jail" were made on December 30, 2014. Req. 1. Defendant Acri claims that "this discovery introduces brand new matters which the [G]overnment has apparently had for some

---

12. In holding that the defendant did not suffer substantial prejudice from the district court's denial of a continuance, *Stalnaker* court noted that "counsel had several weeks to prepare; [the defendant] benefited from having two co-defendants each represented by his own counsel; the government cooperated by providing organized discovery binders; and [the defendant's] counsel is a seasoned attorney." *Stalnaker*, 571 F.3d at 439.

time and failed to reveal and contained possibly [incriminating] statements by a co-defendant." *Id.* at 2.

The Government asserts that it "provided Defendants with transcripts of selected portions of the jail recordings of Hall" on February 4, 2016, however, "Defendants have had the full recordings for several months." Gov't Resp. 8. The Government provided the full recordings of these phone calls to Defendant Hall's counsel in March 2015 and to counsel for Defendants Acri and Hayes in April 2015. *Id.*

The Court finds that the Government's production of the selected audio recordings on February 4th does not merit a continuance. Defendants have had access to the full audio recordings since March and April of 2015, giving defense counsel ample time to review and assess the recordings in detail.

**B. Witnesses**

■ Finally, Defendants also request a continuance because two witnesses will be unavailable to testify at trial. The Court finds that the unavailability of these two witnesses does not warrant a continuance because defense counsel did not demonstrate due diligence in attempting to secure these witnesses' attendance. Additionally, at the November 2015 Hearing, defense counsel for each of the defendants indicated that they would not be filing motions to continue, given the difficulty in securing a trial date that would accommodate each of the Defendants and defense counsel.

Specifically, Defendants request a continuance because of the unavailability of Mr. Steve Palermo, who was scheduled to undergo knee surgery on February 5, 2016. Def. Hall's Fourth Mot. 1. "As a result, Mr. Palermo will be unable to physically travel any extended distances for the next two months," and "Mr. Palermo does not reside in the state of Texas." *Id.* "Additionally, according to Mr. Palermo, doctors have advised him not [to] conduct any of his personal business affairs during the next three weeks due to the medication he will be taking." *Id.*

Defendant Hall argues that "Mr. Palermo's testimony is crucial to Mr. Hall's as well as the other co-defendants' defense." *Id.* at 2. Defendants assert that Mr. Palermo's testimony is intended to rebut the Government's assertion that a $25,000 check Defendants paid Defendant Tuskan was a bribe and part of the alleged conspiracy to pay Defendant Tuskan "in order for him to steer government contracts to [Defendants'] contracting company." *Id.* Mr. Palermo would be able to testify that the $25,000 dollar check was payment for services that [Defendant] Tuskan rendered in connection with a project at Fort Sill and not a bribe, *Id.* at 2–3.

Defendants also seek a continuance based on the unavailability of defense witness Mr. Frederick J. Buonfiglio. *Id.* at 4. Mr. Buonfiglio will be unavailable because "he is completing a project" in Louisiana that is expected to be completed the week of March 1, 2016. *Id.* Additionally, Mr. Buonfiglio is expected to begin another project in Florida after the Louisiana project is completed. *Id.* Consequently, Defendants claim that Mr. Buonfiglio will not be able to testify until after March 25th." *Id.* Defendant Hall asserts that "Mr. Buonfiglio['s] testimony is very important to the defense in that he is going to agree that all parties were made aware that [Defendant] Tuskan had no Government power and that he wasn't a government representative." *Id.* at 4.

■ The Fifth Circuit has held that, "[w]hen a continuance is requested based on the unavailability of a witness, the party

seeking a continuance must demonstrate" the following:

(1) that due diligence was exercised to obtain the attendance of the witness; (2) that the witness would tender substantial favorable evidence; (3) that the witness will be available and willing to testify; and (4) that denial of the continuance would materially prejudice the movant. The required prejudice must be severe or serious.

*United States v. Hickerson*, 489 F.3d 742, 745 (5th Cir. 2007). The Fifth Circuit has also "previously considered the failure to issue a subpoena to a witness to be decisive as to the due diligence factor in some cases." *Id.* (collecting cases).

First and foremost, the Court notes that the following exchange occurred during the November 2015 Hearing:

The Court: There is also an agreement... that if any of the witnesses become unavailable, given the newly selected dates, that there will not be any motion for a continuance, given the challenges we've had in getting to this agreed date, and that other considerations will be made, such as possibly video depositions, if need be.

Is that correct, Mr. Almonte [13]?

Mr. Almonte: Correct.

The Court: Mr. Weiser? [14]

Mr. Weiser: Yes, Your Honor.

The Court: Mr. Gibson? [15]

Mr. Gibson: Yes, Your Honor.

The Court: Mr. Lopez? [16]

Mr. Lopez: Yes, Your Honor.

Status Conference Hr'g Tr. 16, Dec. 18, 2015, ECF No. 229. Accordingly, Defendants presented to the Court that they would secure the testimony of any unavail-able witnesses through other means, such as through depositions. Despite these assurances, Defendants have not requested such relief from the Court.

Furthermore, Defendants have not demonstrated that they acted with due diligence in securing the attendance of Mr. Palermo or Mr. Buonfiglio; they have failed to obtain a subpoena for either of these witnesses. Instead, Defendants waited until the day after the Court convened a motions hearing—where the Court ultimately denied Defendants motions—to inform the Court that two "key" witnesses would be unavailable.

Regarding Mr. Buonfiglio, Defendants had ample time to learn of Mr. Buonfiglio's availability to testify at trial and inform the Court of any potential conflicts. Moreover, Defense counsel could have secured Mr. Buonfiglio's attendance by subpoena. *See* Fed. R. Civ. P. 45(e). "In light of... the failure to obtain a subpoena, [Defendants have not shown] due diligence by [their] defense counsel in ensuring that [Mr. Buonfiglio] would appear." *See Hickerson,* 489 F.3d at 746. Because *Hickerson* "states a test of conjunctive essential elements, and [Defendant] failed step one, [the Court] need not address the other factors." *See id.*

Regarding Mr. Palermo, Defendants do not inform the Court of several pertinent pieces of information concerning Mr. Palermo's surgery. Significantly, Defendants do not indicate whether they informed Mr. Palermo of the trial date; whether Mr. Palermo's knee surgery arose out of a traumatic event, which was unforeseeable; or whether Mr. Palermo's knee surgery was elective and could have been sched-

---

13. Attorney for the Government

14. Defendant Hayes's Attorney

15. Defendant Acri's Attorney

16. Defendant Hall's Attorney

uled at his convenience. Additionally, the Court notes that Defendant Hall's counsel asserts that "[he] informed the [C]ourt that [he] personally spoke with Mr. Palermo regarding [Mr. Palermo's] up- and-coming knee surgery .... because, as a person who has personally had four knee surgeries in his lifetime, [defense counsel] realized that two to three weeks was not to be enough time to sufficiently recover from a partial knee replacement..." Reply 1–2. Although defense counsel may have been well-intentioned in providing this information, his similar medical experience is not a sufficient basis to assess Mr. Palermo's availability or the amount of recovery time Mr. Palermo will require—individuals respond to medical procedures and pain medication differently.

Furthermore, although Defendant Acri's counsel claims that he was only recently informed of Mr. Palermo's knee surgery, Defendants have similarly not acted with due diligence in securing Mr. Palermo's testimony. Defendants have not moved the Court to depose Mr. Palermo at a location and time that would be convenient to him, though this option was, and still is, available to them. *See* Fed. R. Crim. P. 15. Additionally, Mr. Palermo will likely not be called to testify until the week of February 22, 2016, (the Government's trial estimate for its case-in-chief is seven days, and jury selection and trial are scheduled for February 16, 2016). Therefore, three weeks will have elapsed since Mr. Palermo's surgery before he is called to testify.

Thus, the Court finds that Mr. Palermo and Mr. Buonfiglio's unavailability does not warrant a continuance.

## IV. CONCLUSION

Given that Defendants were originally indicted in December 2014, given that the Court granted the parties' request that the case be designated as complex, given that the Court has afforded the parties almost a full calendar year in which to engage in discovery and prepare for trial, given that the Court granted defense counsel's joint request to continue the January 2015 trial setting due to a witness's unavailability, specially setting the trial on a date which all parties agreed to, and given the agreement of the parties that the future unavailability of witnesses would not be a basis for any further continuances, the Court can only conclude that efforts to continue the trial as presently scheduled would unnecessarily prolong the final determination of the issues and not further the ends of justice.

Accordingly, **IT IS ORDERED** that Defendant Christine Prince Hayes's "Motion for Continuance" (ECF No. 254) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Christine Prince Hayes's "Corrected Motion to Join Co–Defendants' Motion to Continue Trial Setting" (ECF No. 285) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Earl Gordon Hall Jr.'s "Motion to Join Codefendants Hayes' Motion to Continue Trial Setting" (ECF No. 255); "Motion to Continue Trial Setting" (ECF No. 278); "Supplemented Motion to Continue Trial Setting (ECF No. 281); and "Motion to Continue Trial Setting or in the Alternative Strike the Government's Evidence Disclosed February 4, 2016," (ECF No. 283) are **DENIED**.

**IT IS FINALLY ORDERED** that Defendant Anthony D. Acri III's "Motion for Continuance of Trial Setting (ECF No. 260); "Motion to Continue Jury Trial Setting" (ECF No. 277); and "Request for Permission to File Additional Motions" (ECF No. 282) are **DENIED**.